```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
MALCOLM BEY,

                         Plaintiff,

       -against-                              MEMORANDUM & ORDER
                                              11-CV-3296(JS)(WDW)
STATE OF NEW YORK, NASSAU COUNTY INC.,
NASSAU COUNTY FAMILY COURT, NASSAU            **FILED**
COUNTY CHILD PROTECTIVE SERVICES,             **CLERK**
EDMUND DANE, SUZANNE LEAHEY, ELIZABETH
McGRATH, ROSALIE FITZGERALD, JOHN             6/25/2013 5:04 pm
COPPOLA, ALTON WILLIAMS, DAVID SULLIVAN,
KATHLEEN RICE, DAVID GOTIMER, BRUCE           **U.S. DISTRICT COURT**
COHEN, MERRY-LOU FERRO, CHERYL KREGER,        **EASTERN DISTRICT OF NEW YORK**
WARREN FREEMAN, and JANE DOE/JOHN DOE         **LONG ISLAND OFFICE**
1-100,

                         Defendants.
----------------------------------------X
APPEARANCES
For Plaintiff:          Malcolm Bey, pro se
                        P.O. Box 31
                        Uniondale, NY 11553


For Defendants:
N.Y.S. Defendants       Ralph Pernick, Esq.
                        N.Y.S. Attorney General's Office
                        200 Old Country Road, Suite 240
                        Mineola, NY 11501

County Defendants       Liora M. Ben-Sorek, Esq.
                        Nassau County Attorney's Office
                        One West Street
                        Mineola, NY 11501

Bruce Cohen, Esq.       Adam Daniel Levine, Esq.
                        Matthew K. Flanagan, Esq.
                        Catalano, Gallardo & Petropoulous, LLP
                        100 Jericho Quadrangle, Suite 326
                        Jericho, NY 11753

Cheryl Kreger, Esq.     Jessica Zimmerman, Esq.
                        Marian C. Rice, Esq.
                        L'Abbate, Balkan, Colavita & Contini LLP
```

1001 Franklin Avenue
Garden City, NY 11530

SEYBERT, District Judge:

Presently before the Court is an unopposed motion filed by Defendants Nassau County (the "County"), Nassau County Child Protective Services ("CPS"), Suzanne Leahey, Elizabeth McGrath, Alton Williams, Kathleen Rice, Donald Gotimer s/h/a David Gotimer, Merry-Lou Ferro, and Warren Freeman (collectively, the "County Defendants") for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, the County Defendants' motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

### I. Procedural Background

Plaintiff Malcolm Bey ("Plaintiff") commenced this action on July 8, 2011 on behalf of himself, his wife Francique, and their minor children, Rein, Drizzle, Truth, and Amicus Curiae (the "Bey Children") against the State of New York, Nassau County Family Court, Judge Edmund Dane, Judge David Sullivan, Rosalie Fitzgerald, John Coppola (collectively, the "State Defendants"), Bruce Cohen, Cheryl Kreger, and the County Defendants asserting claims arising out of petitions for child neglect that were filed in Nassau County Family Court in 2009 and 2010. Specifically, the Complaint pleads violations of the Fourth and Fourteenth

Amendments, various criminal statutes including provisions of Title 18 of the United States Code, international treaties, provisions of the United Nation's Charter, and the Alien Torts Claims Act, as well as claims for "breech [sic] of trust and fiduciary duty," for "use of statutes[,] ordinances, rules and policies of the corporate state of New York[,] not a rule of law against indigenous man," and various claims arising under the laws of the State of New York.  Mr. Bey simultaneously filed an application for a temporary restraining order and preliminary injunction which was denied by this Court on July 13, 2011.  (Docket Entry 8.)

On July 28, 2011, this Court entered an Order that, <u>inter alia</u>, warned Plaintiff that the claims brought on behalf of his children would be dismissed without prejudice unless counsel entered a notice of appearance on their behalf within thirty days.  (Docket Entry 7.)  No counsel ever entered a notice of appearance on behalf of the Bey Children.

On November 4, 2011, the State Defendants moved to dismiss. (Docket Entry 25.)  On November 7, 2011, Defendants Cohen and Kreger moved to dismiss the claims against them respectively (Docket Entries 29, 32), and the County Defendants filed an Answer (Docket Entry 34).  On September 21, 2012, the Court granted the motions to dismiss, dismissing the claims against the State Defendants, Cohen, and Kreger in their entirety.  (Docket Entry

62.) Bey v. New York, No. 11-CV-3296, 2012 WL 4370272 (E.D.N.Y. Sept. 21, 2012) (the "September 21 Memorandum and Order"). In that same Order, the Court dismissed the claims brought on behalf of the Bey Children, id. at *4, and warned Francique Bey that the claims asserted on her behalf would also be dismissed unless she provided the Court with a signed copy of the Complaint within thirty days, id. at *3.[1] She failed to do so, and her claims were accordingly dismissed on January 9, 2013. (Docket Entry 64.)

Also on January 9, 2013, the County Defendants moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Entry 65.) Plaintiff has not opposed this motion, which is currently pending before the Court.

II. Factual Background[2]

The Complaint is over forty pages long and is comprised of fifty-five paragraphs, eleven "maxims of law," and sixteen causes of action. The Court will only discuss those facts that are relevant to the pending motion--i.e., the facts related to Plaintiff's remaining claims against the County Defendants.

On or around June 4, 2009, the Bey Children were "seized from class and without parental knowledge, consent, warrant or

---

[1] Only Plaintiff had signed the Complaint.

[2] The following facts are drawn from Plaintiff's Complaint and the documents attached thereto and referenced therein and are presumed to be true for the purpose of this Memorandum and Order.

4

authoritative paperwork present" "interrogated" by a CPS agent, Defendant Elizabeth McGrath, and a Nassau County police officer, Defendant Alton Williams. (Compl. ¶¶ 14, 20, 26.) The Bey Children were later taken to the police station "separated from their mother and all questioned without their parents['] consent for hours, without a warrant, without court order, or authoritative paperwork." (Compl. ¶ 26.) Mrs. Bey was arrested, and the Bey Children returned home with their father. (Id.)

The following day, however, Defendant McGrath returned to the Bey residence with "approximately 7 persons dressed like police officers" to remove the Bey Children from the home. (Compl. ¶ 27.) The Bey Children were not permitted to see or speak to their parents while they were separated. (Compl. ¶ 28.) According to the Complaint, Plaintiff was not provided with "notice of a hearing or proceeding" prior to the children being removed from the home, and they were taken notwithstanding Plaintiff's "indigenous status."[3] (Compl. ¶ 27.) The children were placed in foster care, and, on or around June 9, 2009, petitions for neglect were filed in the Family Court against Plaintiff and his wife. (Compl. ¶ 31.) Defendant Suzanne Leahey, an Assistant Director

---

[3] Plaintiff has declared his independence from the United States and, although he resides in the state of New York, he considers himself "an indigenous man (not a US Citizen)." (Compl. ¶ 2.)

5

for CPS, was allegedly seeking to remove the Bey Children from their home permanently. (Compl. ¶ 32.)

Shortly thereafter, Defendant McGrath inspected the Bey home and, after finding it habitable for the Bey Children, returned them to their father. (Id.) A temporary restraining order was issued against Francique Bey, however, and she was only allowed supervised visitation with her children. (Id.) She was ordered to take parenting and anger management classes. (Compl. ¶ 34.)[4] During this time, Plaintiff "lost work" because he could not afford daycare, and he and his family were eventually evicted from their home. (Compl. ¶ 35.) When Plaintiff told Defendant McGrath that the family was being evicted, she said "that if he did not get social services and go to a shelter for services[,] she would come and take the children again." (Id.) "[U]nder threat and duress," Plaintiff reluctantly agreed. (Id.) Defendant McGrath arranged for the Department of Social Services to pay to put Plaintiff's belongings in storage while they were displaced; however, "Social Services did not pay the bill consistently[,] and after several

---

[4] The Complaint also asserts that Defendant Kathleen Rice, the Nassau County District Attorney, stated that the classes that Francique Bey took were "unacceptable," and she "ordered the Judge to order more classes." (Compl. ¶ 34.) The Complaint also asserts that Defendant Rice "attempted to coerce Francique Bey to agree to a plea deal." (Compl. ¶ 33.) As all of Francique Bey's claims have been dismissed, these claims are irrelevant to the present analysis.

6

months of non-payment and without notification to Bey Family, [their] possessions were sold in an auction." (Id.)

In December 2009, the neglect petition against Plaintiff was withdrawn. (Compl. ¶ 36.) However, in April 2010, Defendant Leahey filed a new neglect petition which resulted in a restraining order being issued against Plaintiff "without his knowledge and without him ever being served a copy of the order or demand appearance in a tribunal." (Compl. ¶ 37.)

From December 2009 through February 2011, the Bey Children were repeatedly questioned by Defendant McGrath, Defendant Merry-Lou Ferro (another CPS agent), and/or various other CPS agents at school and were visited by a CPS agent twice a month at home. (Compl. ¶¶ 38-39.)

In the interim, Plaintiff returned to Family Court approximately once a month between December 2009 and January 2011 "under duress and threat of duress and unlawful seizure of his children." (Compl. ¶ 42.) The judge and counsel for CPS, Defendant Donald Gotimer's "representative" would "talk[] over [Plaintiff], adjourn court, and set new court dates," without addressing his objections. (Id.)

In January 2011, Judge Dane extended the temporary restraining order issued against Mr. Bey and ordered that he be mentally evaluated. (Compl. ¶ 45.) Mr. Bey returned to court on March 15, 2011 for trial. Defendant Gotimer's "representative"

7

asked Plaintiff to turn over custody of the Bey Children to CPS for one year, but Plaintiff refused and his trial was adjourned to April 29, 2011. (Compl. ¶¶ 46, 48.) Mr. Bey returned to court on April 29 and was asked to turn over custody of his children to CPS for six months, but he again refused. (Compl. ¶ 49.) His trial was adjourned to May 13, 2011. (Id.) On that date, he was again asked to give CPS custody of his children. (Compl. ¶ 50.) He refused, and the trial was rescheduled for June 8, 2011.[5] (Compl. ¶ 51.)

On June 7, 2011, Plaintiff informed that the Court that he would not be attending any future court dates (Compl. ¶ 52), and, on June 15, 2011, he received "an offer to contract threatening him with arrest and imprisonment if he does not come to court." (Compl. ¶ 53.) Plaintiff commenced this action shortly thereafter on July 8, 2011.

## DISCUSSION

The Court will discuss the applicable standard of review before addressing the merits of the pending motion.

I. Standard of Review

The standard for deciding a motion pursuant to Rule 12(c) "is identical to that of a Rule 12(b)(6) motion for failure to state a claim." Patel v. Contemporary Classics of Beverly Hills,

---

[5] The Complaint mistakenly states that the trial was rescheduled for June 2008.

8

259 F.3d 123, 126 (2d Cir. 2001); see also Karedes v. Ackerley Grp., Inc., 423 F.3d 107, 113 (2d Cir. 2005). To survive a motion to dismiss for failure to state a claim, a plaintiff must plead sufficient factual allegations in the complaint to "state a claim [for] relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929, 949 (2007). A complaint does not need "detailed factual allegations," but it demands "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. In addition, the facts pled in the complaint "must be enough to raise a right to relief above the speculative level." Id. Determining whether a plaintiff has met his burden is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); accord Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009).

In deciding a motion to dismiss, the Court is confined to "the allegations contained within the four corners of [the] complaint." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998). This has been interpreted broadly to include any document attached to the complaint, any statements or documents incorporated in the complaint by reference, any document on which the complaint heavily relies, and anything of which judicial notice

9

may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-52 (2d Cir. 2002); Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir. 1991).

II. The County Defendants' Motion for Judgment on the Pleadings

As an initial matter, the Court hereby GRANTS the County Defendants' motion to the extent that it seeks judgment on the pleadings on Plaintiff's claims arising under the Alien Tort Claims Act, Title 18 of the United States Code and other criminal statutes, international treaties, and provisions of the United Nation's Charter, his claim for breach of the public's trust, and his claim regarding the unconstitutionality of all laws enacted after 1867. As the Court explained in its September 2012 Memorandum and Order, these are not cognizable causes of action against any defendant. The Court will not reiterate its rationale for dismissing these claims herein, and the reader is referred to the Court's analysis of these claims in the September 2012 Memorandum and Order, 2012 WL 4370272, at *6-7.

Thus, all that remains pending against the County Defendants are the claims pursuant to 42 U.S.C. § 1983 and the claims arising under state law.

A. Section 1983 Claims

The Court reads the Complaint liberally to assert the following claims for relief against the County Defendants under Section 1983: (1) that Plaintiff's procedural due process rights

were violated when the Bey Children were removed from his custody without prior notice and an opportunity to be heard; (2) that his right to be free from state interference with his familial relationships was violated; and (3) a claim for malicious abuse of process.[6] The Court will discuss the Section 1983 claims as pled against each of the County Defendants separately.

    1. The County

The County Defendants argue that the Section 1983 claims against the County must be dismissed because Plaintiff has failed to plead a basis for municipal liability. The Court agrees. A municipality may not be held liable under Section 1983 for alleged unconstitutional actions committed by its employees solely on the basis of respondeat superior. Monell v. N.Y.C. Dep't of Soc. Servs., 436 U.S. 658, 690-91, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Rather, "to hold a municipality liable in such an action,

---

[6] The Complaint also appears to assert two claims against the County Defendants arising out of the Fourth Amendment's prohibition against unreasonable searches and seizures: one arising out of Francique Bey's arrest and the other arising out of the alleged seizure and interrogation of the Bey Children. As the Court previously held, however, a non-lawyer cannot represent the interests of another pro se, Bey, 2012 WL 4370272, at *3, and Plaintiff does not have standing to assert these claims on his own behalf, see, e.g., Guan N. v. N.Y.C. Dep't of Educ., No. 11-CV-4299, 2013 WL 67604, at *9 & n.4 (S.D.N.Y. 2013) (stating that although children and their parents both have the right to be free from unreasonable searches and seizures, there was no authority for the proposition that a parent has the right not to have his or her child subjected to questioning).

11

a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995) (internal quotation marks and citation omitted); see also Hartline v. Gallo, 546 F.3d 95, 103 (2d Cir. 2008). To establish the existence of a municipal policy or custom, the plaintiff must allege: (1) the existence of a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision-making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge and acquiescence can be implied on the part of the policy making officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to "deliberate indifference" to the rights of those who come in contact within the municipal employees. Sulehria v. City of N.Y., 670 F. Supp. 2d 288, 320 (S.D.N.Y. 2009); see also Davis v. Lynbrook Police Dep't, 224 F. Supp. 2d 463, 478 (E.D.N.Y. 2002).

The Complaint here is devoid of any allegations from which the existence of a municipal policy or custom can be plausibly inferred. Accordingly, the Section 1983 claims against the County are hereby DISMISSED.

2. CPS

The County Defendants argue that the claims against CPS must be dismissed because it lacks the capacity to be sued. The Court agrees. "[U]nder New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and therefore, cannot sue or be sued." Davis, 224 F. Supp. 2d at 477. Here, because CPS is an administrative arm of the County, and not an independent legal entity, it lacks the capacity to be sued. See, e.g., Teitelbaum v. Katz, No. 12-CV-2858, 2013 WL 563371, at *5 (S.D.N.Y. Feb. 11, 2013) (dismissing claims against Orange County Child Protective Services). Accordingly, the Section 1983 claims against CPS are DISMISSED.

3. Rice, Gotimer, and Freeman

The County Defendants argue that the claims against Defendants District Attorney Rice, CPS Attorney Gotimer, and Warren Freeman must be dismissed for failing to plead their personal involvement in the alleged constitutional deprivations. The Court agrees.[7] "It is well settled in this Circuit that

---

[7] The County Defendants also argue that the claims against the remaining defendants--Leahey, McGrath, Williams, and Ferro--must be dismissed for failing to plead their individual involvement. With respect to these defendants, this argument is entirely without merit as Leahey drafted and signed the neglect petitions, which, according to the Complaint, led to the removal of the Bey Children, and McGrath, Williams, and Ferro were all involved in the questioning of the Bey Children and removing

personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (internal quotation marks and citation omitted). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676.

Here, the only allegations in the Complaint involving Defendant Rice are that she "attempted to coerce Francique Bey to agree to a plea deal" (Compl. ¶ 33) and she "ordered the Judge to order [Francique Bey to take] more [parenting and anger management] classes" (Compl. ¶ 34). See also supra note 4. However, Francique Bey has been dismissed as a plaintiff in this action, and, as the Court previously stated, Plaintiff may not bring these claims on her behalf. Accordingly, as the Complaint is void of any allegations that Defendant Rice was personally involved in Plaintiff's alleged constitutional deprivations, the claims against her are hereby DISMISSED.

Similarly, the Complaint is void of any allegations that Defendants Gotimer or Freeman were personally involved--instead it refers to Defendant Gotimer's "representative" (see, e.g., Compl.

---

them from the home. Thus, the Complaint clearly alleges that they were personally involved in the actions giving rise to this suit. Whether their actions violate Plaintiff's constitutional rights is a separate question.

14

¶ 42) and does not mention Freeman at all, aside from stating that he is a "CPS supervisor" (Compl. ¶ 22a). As there is no respondeat superior liability under Section 1983, see Richardson v. Goord, 347 F.3d 431, 435 (2d Cir. 2003), the claims against Defendants Gotimer and Freeman are also DISMISSED.

### 5. Leahey, McGrath, Williams, and Ferro

The County Defendants argue that the claims against Defendants Leahey, McGrath, Williams, and Ferro are barred under the doctrine of qualified immunity. Qualified immunity protects a government official sued in his official capacity:

> (1) if the conduct attributed to him was not prohibited by federal law; or (2) where that conduct was so prohibited, if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time it occurred; or (3) if the defendant's action was objective[ly] legal[ly] reasonable[] . . . in light of the legal rules that were clearly established at the time it was taken.

Manganiello v. City of N.Y., 612 F.3d 149, 164 (2d Cir. 2010) (alterations and omission in original) (internal quotation marks and citations omitted). The County Defendants assert, without citing any applicable law, that the actions of Defendants Leahey, McGrath, Williams, and Ferro were reasonable because they were "predicated upon information obtained from employees of Child Protective Services" and, therefore, "[p]robable cause existed for

15

the interviews and Plaintiff's arrest." (Cnty. Defs. Mot. 10.) This argument is confusing for a few reasons.

First, it is unclear whether the County Defendants are arguing that there was no underlying constitutional violation or that, even if there was a constitutional violation, the actions of these Defendants were objectively reasonable. To the extent that they are arguing that their actions were objectively reasonable, the Second Circuit has held that this inquiry often "turns on factual questions that cannot be resolved at this stage of the proceedings." Taylor v. Vt. Dep't of Educ., 313 F.3d 768, 793 (2d Cir. 2002); see also Maloney v. Cnty. of Nassau, 623 F. Supp. 2d 277, 292 (E.D.N.Y. 2007) ("Because this defense necessarily involves a fact-specific inquiry, it is generally premature to address the defense of qualified immunity in a motion to dismiss." (internal quotation marks and citation omitted)).

Second, to the extent that the County Defendants are attempting to argue that there was no underlying constitutional violation, their analysis is woefully incomplete. The County Defendants fail to identify: (1) the "employees of Child Protective Services" who allegedly provided unspecified "information" to these Defendants, (2) what that "information" was, and (3) why it established probable cause. Their motion papers do not even include a statement of facts, and, although counsel for the County Defendants submitted an affidavit in support of their motion, which

16

attached various filings from the neglect proceedings that were attached to Plaintiff's Complaint, those exhibits are not cited in this section of the brief. Although it is very likely that probable cause did exist, "[i]t is well-established that courts cannot make a party's arguments for it or 'fill in the blanks' on that party's behalf." Polk v. Sears, Roebuck, & Co., No. 11-CV-0725, 2012 WL 1640708, *3 (S.D. Ala. May 8, 2012); cf. Sioson v. Knights of Columbus, 303 F.3d 458, 460 (2d Cir. 2002) (stating that the Circuit will generally decline to scour the record for evidence to support a party's arguments).

Finally, although probable cause may defeat Plaintiff's claim for malicious abuse of process, see Savino v. City of N.Y., 331 F.3d 63, 76-77 (2d Cir. 2003) ("In New York, a malicious abuse of process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." (emphasis added) (internal quotation marks and citation omitted)), it is less clear if and how probable cause relates to Plaintiff's due process and intimate association claims.[8]

---

[8] Defendants also argue, without citing any legal authority, that "the County Defendants' actions were privileged as they were acting under Court Order." (Cnty. Defs. Mot. 6.) The County Defendants' actions that form the basis of Plaintiff's claims,

17

Thus, although the Court highly doubts that Plaintiff has stated a plausible claim for relief, the Court cannot dismiss the Section 1983 claims pending against Defendants Leahey, McGrath, Williams, and Ferro for the reasons asserted by the County Defendants.

B.  State Law Claims

The Complaint also asserts claims for abuse of process and fraud arising under New York state law.  These claims, however, were not mentioned in the County Defendants' motion to dismiss, and, accordingly, they will not be dismissed at this time.

CONCLUSION

For the foregoing reasons, the County Defendants' unopposed motion for judgment on the pleadings is GRANTED IN PART and DENIED IN PART.  The only remaining claims are the New York common law claims against the County Defendants, and the Section 1983 due process, intimate association, and malicious abuse of process claims against Defendants Leahey, McGrath, Williams, and Ferro.

The Court notes that there is a motion to stay discovery pending the outcome of this motion presently before Magistrate

---

however, occurred at least in part before the initial neglect petition was filed--thus before the Family Court's involvement. Therefore, it is unclear how they could have been acting "under Court Order."

18

Judge William D. Wall.  Thus, the Court hereby REFERS this action to Judge Wall for all remaining pretrial matters.

Counsel for the County Defendants is ORDERED to serve a copy of this Memorandum and Order on the pro se Plaintiff and to file proof of service forthwith.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: June 25, 2013
Central Islip, NY